1

2

3

4

5

6

7                                    UNITED STATES DISTRICT COURT

8                                    NORTHERN DISTRICT OF CALIFORNIA

9    MARIA SANTILLAN, et al., on behalf of themselves and          No. C 04-02686 MHP
     others similarly situated,
10
                              Plaintiffs,
11
     v.
                                                                   **MEMORANDUM & ORDER**
12   ALBERTO R. GONZALES, Attorney General of the                  **Re: Permanent Injunction**
     United States; MICHAEL CHERTOFF, Secretary of the
13   Department of Homeland Security; THE UNITED
     STATES CITIZENSHIP AND IMMIGRATION
14   SERVICES (USCIS); EDUARDO AGUIRRE, JR.,
     USCIS Director; DAVID STILL, USCIS San Francisco
15   District Director,

16                            Defendants.

17   _____

18

19          Plaintiffs Maria Santillan, et al. represent a class of persons who have been or will be granted lawful

20   permanent resident status by the Justice Department's Executive Office of Immigration Review and to

21   whom the United States Citizenship and Immigration Services has failed to issue evidence of status as a

22   lawful permanent resident.  Following this court's grant of plaintiffs' motion for summary judgment and

23   request for a permanent injunction, see Santillan v. Gonzales, 388 F. Supp. 2d 1065 (N.D. Cal. 2005)

24   (Patel, J.), the court requested proposals from both parties as to the appropriate scope of the injunction.

25   Having considered the proposals of both parties, as well as the record relied upon by this court in granting

26   plaintiffs' motion for summary judgment, for the reasons set forth below the court issues the following

27   permanent injunction.

28
                                                      1

INTRODUCTION

The factual history of this case is well documented in the court's previous orders.  See Santillan, 388 F. Supp. 2d at 1065 (granting plaintiffs' motion for summary judgment); Santillan v. Gonzales, No. C 04-02686 MHP, 2005 WL 1592872 (N.D. Cal. July 1, 2005) (denying defendants' motion to dismiss); Santillan v. Ashcroft, No. C 04-02686 MHP, 2004 WL 2297990 (N.D. Cal. Oct. 12, 2004) (granting plaintiffs' motion for class certification).  In brief, plaintiffs were granted the status of lawful permanent resident ("LPR") by Immigration Judges or by the Board of Immigration Appeals, constituent courts of the Justice Department's Executive Office of Immigration Review ("EOIR").  Following the EOIR's determination, plaintiffs sought documentation of their adjusted status as LPRs from their local United States Citizenship and Immigration Services ("USCIS") sub-office, through a process called Alien Documentation, Identification and Telecommunication ("ADIT") processing.  Plaintiffs have not yet received the requested documentation of their permanent resident status.

The class is divided into two subclasses based on differences in the procedures through which class members were adjudicated to be lawful permanent residents.  Members of the pre-April 1, 2005 subclass were granted LPR status under regulations in force prior to April 1, 2005.  Under the pre-April 1 regulations, an alien seeking LPR status was not required to undergo any background checks prior to his or her EOIR adjudication.  Thus members of the pre-April 1 subclass may have been granted LPR status without having completed the background checks now required by USCIS before issuing permanent documentation.  In contrast, members of the post-April 1 subclass were required to complete the mandatory background checks prior to being granted LPR status.

Prior to 2001, an LPR awaiting permanent documentation could have obtained temporary documentation—often a special stamp on the LPR's passport—simply by contacting USCIS and presenting a copy of the EOIR order.  USCIS ceased granting temporary documentation as a general practice some time after September 11, 2001.

Throughout this litigation, and again at the hearing regarding the scope of the permanent injunction, defendants have attempted to justify their decision to cease issuing temporary documentation and any delays in issuing permanent documentation by appealing to national security concerns.  Although defendants' concerns are illogical and unacceptably vague as a legal justification for withholding

**United States District Court**
For the Northern District of California

1   documentation—an issue explored at great length in this court's order on plaintiffs' motion for summary

2   judgment—for purposes of crafting an appropriate injunction it is useful to divide the stated concerns into

3   three categories.

4     First, defendants are concerned about verifying the identity of LPRs who seek permanent

5   documentation and verifying that each person requesting documentation has in fact been granted LPR

6   status.  As a result of defendants' Byzantine organizational structure and antique computer systems, USCIS

7   is forced to obtain a paper record of each adjudication and to manually match that record with the alien

8   who appears at a USCIS office seeking status documentation.  In order to verify the alien's identity,

9   defendants may ask the alien a series of personal questions based on information in the alien's file (the "A-

10   file").

11     Second, defendants are concerned about completing background checks prior to issuing any form

12   of documentation.  As explained in this court's previous order, the two required checks are an FBI

13   fingerprint check and an IBIS name check.  At the preliminary injunction hearing, defendants also suggested

14   that they will perform a third check—an FBI name check—in some cases, and will withhold documentation

15   until the name check is complete.

16     Third, defendants are concerned about collecting so-called "biometric" data—fingerprints,

17   photographs, and the like—from LPRs prior to issuing documentation.  The biometric data is used to create

18   the permanent LPR documentation, commonly known as a "green card."  Defendants are unable to collect

19   biometric data themselves.  Instead, the collection process is outsourced to so-called "application support

20   centers," at which the LPRs are required to make a separate appointment.  The application support centers

21   send the biometric data directly to the facility that processes green cards.  According to defendants, green

22   cards are more secure than the previously issued temporary documentation.  In support of their argument

23   that they are legally precluded from issuing temporary documentation, defendants cite 8 U.S.C. section

24   1732(b), which states in relevant part that "[n]ot later than October 26, 2004, the Attorney General and the

25   Secretary of State shall issue to aliens only machine-readable, tamper-resistant visas and other travel and

26   entry documents that use biometric identifiers."

27     Weighing against defendants' purported national security concerns are the real and substantial

28   harms suffered by class members who are unable to work lawfully or travel abroad to see family without

3

1   status documentation.  These rights are vested from the moment class members are granted LPR status,

2   and defendants' withholding documentation from them prevents class members from exercising their lawful

3   rights.  Many class members, particularly members of the pre-April 1 subclass, have waited extraordinary

4   lengths of time—time measured in months and years—for the documentation which secures their ability to

5   live as lawful residents of this country.  In keeping with this court's previous order, the injunction set forth

6   below must not unreasonably delay the issuance of such documentation.

7           Fortunately, the parties are in general agreement as to the timeline and procedures to be followed in

8   the (according to defendants) normal case where each of defendants' security concerns can be addressed

9   in a timely fashion.  The parties diverge sharply, however, as to the appropriate course of action when the

10  process breaks down.  Because of defendants' needlessly complex bureaucracy, many things may in fact

11  go wrong, and often do, including the following: (1) USCIS may not receive notification of the EOIR

12  adjudication; (2) USCIS may not receive the A-file, which contains personal information used to identify

13  the LPR once he or she reports to USCIS to obtain documentation; (3) the security checks may not be

14  completed on time; and (4) the application support center may not follow the proper procedure in collecting

15  biometric data.  Plaintiffs argue that in the event of a problem attributable to defendants' internal

16  communication or processes, defendants should be required to issue some form of temporary

17  documentation on the same timeline as specified for the normal case, to be followed later by permanent

18  documentation once the problem is resolved.  Defendants propose that no documentation be issued in the

19  event of a problem, but rather that the LPR be responsible for checking on the status of the documentation

20  periodically until permanent documentation can be issued.  Defendant further proposes a complex process

21  of internal reviews of these delayed cases at six-month intervals, but does not wish to guarantee issuance of

    documentation within a fixed period of time.

22          The obvious problem with defendants' proposal is that it does not depart in any meaningful way

23  from the status quo.  Defendants point to certain process changes—such as the creation of a special form

24  that can be used to convey to USCIS all of the information necessary to produce a green card without the

25  need for USCIS to obtain the A-file—but these changes are of an incremental nature and do not provide

26  LPRs with the requisite level of assurance that their employment and travel interests will be protected.

27          Nor do defendants' security concerns justify withholding documentation beyond a prescribed

28

4

**United States District Court**
For the Northern District of California

reasonable period of time.  With respect to the first concern—identifying LPRs and verifying the grant of LPR status—the court is confident that defendants are sufficiently resourceful to find a way of doing so adequately in all cases.  As was discussed at the preliminary injunction hearing, defendants have at their disposal a variety of records systems that may contain information about the LPR seeking documentation.  Defendants may also require the LPR to bring valid, secure, photographic identification to the USCIS appointment.

With respect to the second security concern, performing background checks, the court has already discussed at great length why defendants' arguments are unsupported by the factual record or common sense.[1]  The class members have all been through EOIR adjudication, in which the Department of Homeland Security is represented by Immigration and Customs Enforcement.  Defendants have not identified a single class member, past or present, who is a potential threat to national security.  The background checks, by defendants' own admission, are ineffective in identifying the "young mujahideen with clean records" whom the government fears most.  Finally, defendants are free to pursue additional security checks once status documentation issues and to commence removal proceedings—including detention which is beyond the review of this court—in the event that an actual concern arises.

Finally, with respect to the third concern—issuing secure documentation—the court has the following observations.  Defendants conceded at the injunction hearing that although the practice of issuing temporary documentation has ceased as a general matter, temporary documentation continues to be issued in limited cases.  Defendants have also strenuously argued that in the vast majority of cases LPRs will be able to obtain permanent documentation on the specified timeline.  Requiring defendants to issue temporary documentation in the limited number of cases where the normal documentation process breaks down should therefore not result in the creation of a significant volume of temporary documents.

The court also notes that the statute cited by defendants, 8 U.S.C. section 1732(b), pertains only to travel documentation and does not prevent defendants from issuing temporary, unsecure employment documentation.  With respect to travel documents, defendants are free to incorporate as many security measures into the temporary documentation as they are able, so long as temporary documentation is timely issued.

Undermining all of defendants' security arguments is the faulty premise that the current state of

5

affairs with respect to class members is "secure."  Defendants acknowledged at the injunction hearing that they do not possess any accurate records of who the class members are, much less where they currently reside.  Class members are presently forced to work and travel internationally, if at all, through unlawful means.  To borrow defendants' own term, the class members live in the "shadow[s]."  The injunction set forth below gives defendants the opportunity to integrate them into the light of lawful society.  The government's notion that aliens running about without identification provides a more secure situation than aliens with documentation is absurd.

Based on the foregoing observations, the history of rulings in this case, the arguments of the parties, and the factual record submitted to the court, the court issues the following injunction.

INJUNCTION

I.   POST-APRIL 1 SUBCLASS:  PROCEDURES AND TIME PERIODS FOR ISSUANCE OF STATUS DOCUMENTATION

    A.   DHS's "Post-Order Instructions" on Obtaining Status Documentation Provided to Aliens With Orders Evidencing LPR Status from EOIR

1.   At the conclusion of the EOIR Immigration Court proceedings, Immigration and Customs Enforcement ("ICE") counsel shall provide aliens with the Department of Homeland Security ("DHS") "Post-Order Instructions" for making a United States Citizenship and Immigration Services ("USCIS") appointment for processing of status documentation.  In decisions granting aliens relief from removal, the EOIR Board of Immigration Appeals shall include a notice to aliens with information on how to access DHS procedures for obtaining status documentation.

2.   A notice of documentation procedures shall be maintained on the USCIS website.  As appropriate, DHS shall provide hyperlinks to this posted notice from other websites maintained by DHS.  The Department of Justice ("DOJ") shall also provide hyperlinks to this notice from appropriate websites.

    B.   Notice of Final EOIR Order Provided to USCIS by ICE

1.   Within three business days of an EOIR order becoming final, local DHS/ICE Chief Counsel offices shall deliver to USCIS a notice of the final EOIR order via an ICE form (the "Background Check Registry" notice).  The form shall provide information that USCIS requires to process an alien for status documentation without the need to obtain the alien's A-file.  ICE's form shall also verify completion of all

**United States District Court**
For the Northern District of California

1    required security and background checks, provide the alien's Class of Admission code, and, where

2    applicable, indicate that a visa number has been obtained from the Department of State.  ICE shall

3    promptly provide an additional copy of the Background Check Registry to USCIS upon request if, for any

4    reason, the original is not available when the alien appears with proof of a final grant of relief.

5         C.    Alien Makes and Attends USCIS Appointments for Documentation      Processing
             and Biometrics Collection; Permanent Resident Card Mailed to        Alien

6    1.      An alien who has received an EOIR order evidencing a grant of LPR status will make an online

7    InfoPass appointment and will appear at a local USCIS office pursuant to the DHS Post-Order

8    Instructions.  If the alien or his representative is unable to access a computer or obtain assistance to access

9    one, or if the alien resides in a district where InfoPass indicates that there are no appointments available, the

10    alien may go to a local USCIS office for assistance and USCIS shall schedule an InfoPass appointment for

11    the alien within two weeks of the alien's visit to the USCIS office.

12    2.      At the appointment, USCIS will verify the identity of the alien and will ensure that the same alien

13    has received a final EOIR order of relief by confirming that an ICE notice of such order has been received

14    for the alien.  The copy of the EOIR order or decision brought by the alien to his appointment will be

15    compared to the ICE notice.  If there are discrepancies, USCIS may need to contact the relevant ICE

16    Chief Counsel's Office to confirm accurate information.  If the ICE notice has not arrived in a timely manner

17    before the alien appears for an appointment, USCIS shall obtain the notice from ICE.  ICE shall promptly

18    assist USCIS if aliens appear with EOIR orders and there is a need to verify that a final grant has been

19    issued.

20    3.      If the alien's biometrics have not been previously obtained in a manner that can be retrieved by

21    USCIS for card production, the alien shall be scheduled at an Application Support Center ("ASC") for

22    biometrics capture within 15 days of the initial InfoPass appointment.  The alien shall not be required to pay

23    the ASC biometrics collection fee a second time if the alien can demonstrate prior payment of a biometrics

24    collection fee.  USCIS will also use the biometrics to assist with identity verification, where necessary.

25    4.      A Permanent Resident Card (I-551) shall be produced and mailed from the DHS Integrated Card

26    Production System (ICPS) facility within 15 days of capture of the alien's biometrics at the ASC, or 30

   days from the alien's USCIS InfoPass appointment, whichever date is later.

27

28

**United States District Court**
For the Northern District of California

5.      If DHS fails to produce and mail a Permanent Resident Card (I-551) to an alien within the time period prescribed in paragraph 4 of this Section, the alien may appear without an appointment at his or her local USCIS office and the USCIS shall issue temporary documentation of legal status sufficient to secure the rights of legal permanent residency, such as a temporary I-551 stamp in a valid passport or an Employment Authorization Document.  Any such temporary documentation shall be valid for at least six months.  DHS shall issue a Permanent Resident Card (I-551) to the alien within six months of issuing the temporary documentation.

D.      Extensions and Tolling of Time Periods to Issue Status Documentation in Certain Cases

1.      The time periods above shall be tolled by any number of days that a class member fails to comply with DHS instructions that are issued consistent with this injunction.


II.      PRE-APRIL 1 SUBCLASS:  PROCEDURES AND TIME PERIODS FOR ISSUANCE OF STATUS DOCUMENTATION

        A.      Notification to Subclass Members of Procedures

1.      Notice to individuals granted relief from removal regarding the procedures for obtaining status documentation shall be maintained on the USCIS website.  The Notice shall instruct aliens to make an appointment with their local USCIS office and to bring a copy of their EOIR order and identity documentation.  DHS shall create hyperlinks to the USCIS website notice, as appropriate, from other websites maintained by DHS.  DOJ shall also provide hyperlinks to this notice from appropriate websites.

2.      USCIS shall mail a letter to potential pre-April 1 EOIR-grantees who received orders between October 1, 2000, and March 31, 2005, and for whom USCIS systems do not show issuance of permanent I-551 cards.  The letter will contain general procedures for obtaining documentation if an alien has received a final order of relief from EOIR that evidences a grant of lawful permanent residence.

B.      Alien Makes and Attends USCIS Appointments for Documentation Processing and Biometrics Collection; USCIS Completes Processing, Including Remaining Background Checks; Permanent Resident Card Mailed to Alien

1.      An alien will make and attend an InfoPass appointment at his local USCIS office.  If the alien or his representative is unable to access or obtain assistance to access a computer, or if the alien resides in a district where InfoPass indicates that appointments are not currently available, the alien may go to a local

USCIS office for assistance and USCIS shall schedule an InfoPass appointment for the alien within two weeks of the alien's visit to the USCIS office.

2.      At the appointment, USCIS will verify the identity of the alien and will verify that the alien has a final EOIR order of relief resulting in a grant of lawful permanent residence.  Where possible, USCIS shall obtain all necessary information from files and systems prior to the arrival of the alien at the InfoPass appointment.

3.      USCIS shall schedule the alien for ASC biometrics capture within 45 days of the alien's initial InfoPass appointment.  The alien shall not be required to pay the ASC biometrics collection fee a second time if the alien can demonstrate prior payment of a biometrics collection fee.

4.      A Permanent Resident Card (I-551) shall be mailed to the alien from the ICPS facility within 15 days of capture of the alien's biometrics at an ASC, or 60 days from the alien's USCIS InfoPass appointment, whichever date is later.

5.      If DHS fails to produce and mail a Permanent Resident Card (I-551) to an alien within the time period prescribed in paragraph 4 of this Section, the alien may appear without an appointment at his or her local USCIS office and the USCIS shall issue temporary documentation of legal status sufficient to secure the rights of legal permanent residency, such as a temporary I-551 stamp in a valid passport or an Employment Authorization Document.  Any such temporary documentation shall be valid for at least six months.  DHS shall issue a Permanent Resident Card (I-551) to the alien within six months of issuing the temporary documentation.

C.      Extensions and Tolling of Time Periods in Certain Cases

1.      The time periods above shall be tolled by any number of days that a class member fails to comply with DHS instructions that are issued consistent with this Plan.

III.      DOCUMENTATION FOR CLASS MEMBERS WHO HAVE ALREADY ATTENDED USCIS APPOINTMENTS FOR DOCUMENTATION AS OF THE EFFECTIVE DATE OF INJUNCTION

If a class member (in either the pre- or post-April 1 subclasses) attended his initial appointment at USCIS for documentation processing on or before the effective date of this Plan, the applicable time periods described in the Plan shall be counted from either 15 days prior to the effective date of the Plan or

the date of the initial USCIS appointment, whichever date is later.  In all such cases where USCIS requires the alien to provide biometrics for card production, USCIS has 15 days from the effective date of this Plan or the date of the alien's ASC appointment, whichever date is later, to produce and mail a permanent I-551.

IV.    RECORDS AND QUARTERLY REPORTS REGARDING COMPLIANCE

1.    If a class member has not received LPR status documentation within the time limits prescribed in Sections I and II of this proposal, the alien may notify a national point of contact ("POC") at the USCIS Office of Field Operations at a dedicated e-mail address.  In the e-mail inquiry, the alien or his or her representative will provide the alien's name, A-number, date of birth, address, date of EOIR order, type of relief granted, whether the order is final (if the alien or his representative knows), the dates of the InfoPass and ASC appointments (if applicable), the USCIS district or suboffice involved, and any other relevant information about his or her request for documentation.  If a class member cannot send an e-mail to the POC, USCIS call responders at the National Customer Service Center shall also collect information from a class member who calls the 1-800 number with an inquiry about the delayed documentation.

2.    USCIS shall keep records of class members who identify themselves, pursuant to paragraph 1 of this Section, as individuals who have not received documentation within the time limits set forth herein.

3.    For three years from the effective date of this plan, DHS shall provide quarterly reports to class counsel listing the class members (by name and A-number) who have contacted the POC during the reporting period and who have been denied documentation of status despite the expiration of the relevant time periods stated herein.  The report shall identify, for each individual, any reason defendants assert for their failure to issue documentation, and shall indicate whether the individual has received status documentation since contacting the POC.  The reports shall be filed on March 30, June 30, September 30, and December 30 of each year, commencing with March 30, 2006.

4.    In no way will failing to contact the POC affect the class members' right to documentation, nor will it extend the time limits set forth in Sections I and II.

V.    REMEDY FOR VIOLATION

1      The remedy for a violation of this injunction will be determined in contempt proceedings brought

2   before this court.

3

4      IT IS SO ORDERED.

5

6

7   Date:   December 22, 2005

8

9                                                  MARILYN HALL PATEL
                                                   United States District Judge
10                                                 Northern District of California

11

**United States District Court**
For the Northern District of California

11

ENDNOTES

1.  The post-9/11 government syndrome of citing "security" as a justification proves too much.  It cannot be summoned up for every action or inaction lest it be sapped of its vitality.